ACCEPTED
03-15-00265-CR
6629169
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/24/2015 4:54:18 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00265-CR, 03-15-00277-CR, 03-15-00288-CR

IN THE
COURT OF APPEALS
OF THE THIRD SUPREME JUDICIAL DISTRICT

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/25/2015 3:39:18 PM
JEFFREY D. KYLE
Clerk

**ROBIE LEE LAWHON**
Appellant

v.

**THE STATE OF TEXAS**
Appellee

**APPELLEE'S BRIEF**

Appeal from the 20th Judicial District Court of Milam County, Texas
The Honorable John Youngblood, Judge Presiding
Trial Court Cause No. CR 24,713, CR 24,712, CR 36,868

**Milam County District Attorney's Office**
204 N. Central
Cameron, Texas 76520
(254) 697-7013
(254) 697-7016 – Facsimile
jjohnson@milamcounty.net
State Bar No. 24092587

**ORAL ARGUMENT WAIVED**

## NAMES OF THE PARTIES TO THE FINAL JUDGMENT

### Appellant

Robie Lee Lawhon
Milam County Jail
512 N. Jefferson Ave.
Cameron, TX 76520

### Appellant's Counsel

Tyler Pennington
106 S. Harris St., Ste 125
Round Rock, Texas 78664

### Appellee – State of Texas

Joseph P. Johnson
Milam County Ass't County and District Attorney
204 N. Central
Cameron, Texas 76520

### Trial Court Judge

The Honorable John Youngblood
20th District Court Judge
102 S. Fannin Ave., 2nd Floor
Cameron, Texas 76520

# TABLE OF CONTENTS

NAMES OF THE PARTIES TO THE FINAL JUDGMENT..........................i
TABLE OF CONTENTS...................................................ii
INDEX OF AUTHORITIES................................................iii
REQUEST FOR ORAL ARGUMENT...........................................iv
STATEMENT OF THE CASE...............................................iv
ISSUES PRESENTED.....................................................v
STATEMENT OF FACTS...................................................1
SUMMARY OF THE ARGUMENT..............................................5
ARGUMENT.............................................................6
ISSUE ONE: WHETHER THE TRIAL COURT ABUSED ITS
DISCRETION...........................................................6

# INDEX OF AUTHORITIES

**United States Constitution**
U.S. Const. amend. VIII...........................................................................................6

**Texas Court of Criminal Appeals**

*Ex Parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.]
1980)...................................................................................................7

*Ex Parte Faye Bufkin, Juan De la Cruz and Richard Bowker*, 553 S.W.2d 116
(Tex. Crim. App. 1977)...................................................................................13

*Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981)...................6, 7, 13

*Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)...............6

**Texas Appellate Court Cases**

*Eggleston v. State*, 917 S.W.2d 100 (Tex. App. San Antonio 1996)..............12

*Ex Parte Chavfull*, 945 S.W.2d 183 (Tex. App. San Antonio 1997)..............11

*Ex parte Jozwiak*, 2005 Tex. App. LEXIS 402, *1 (Tex. App. Dallas Jan. 20,
2005).........................................................................................7, 11

*Ex parte Leonides*, 2002 Tex. App. LEXIS 944, *1 (Tex. App. Austin Feb. 7,
2002)........................................................................................11

*Ex parte Ochoa*, 2004 Tex. App. LEXIS 5817, *3 (Tex. App. Houston 1st Dist.
July 1, 2004)................................................................................6, 13

*Ex Parte Pequeno-Flores*, 2003 Tex. App. 9673, 2003 WL 22682520
(2003)......................................................................................13

*Ex parte Ruiz*, 129 S.W.3d 751 (Tex. App. Houston 1st Dist. 2004)...............6

*Ex Parte Welch*, 729 S.W.2d 306 (Tex. App.—Dallas 1987, no pet.)..............7

**Texas Constitution**
Tex. Const. art. I, § 13...........................................................................6

**Texas Code of Criminal Procedure**
TEX. CODE CRIM. PROC. ANN. ART. 17.15.........................................................7

## REQUEST FOR ORAL ARGUMENT

Appellee waives oral argument.

## STATEMENT OF THE CASE

This case involves Appellant's appeal from a hearing on a Writ of Habeas Corpus Seeking Bail Reduction. Appellant was indicted for two counts of second-degree felony manslaughter under TEX. PEN. CODE § 19.04.[1] Bond was originally at two hundred and fifty thousand ($250,000.00) for each count.[2] Appellant was also indicted for second-degree assault causing serious bodily injury under TEX. PEN. CODE § 22.02(a)(1). Bond on this charge was originally set at one hundred thousand ($100,000.00) dollars.[3]

Appellant sought to challenge the amount of bail on all three cases by filing a Writ of Habeas Corpus Seeking Bail Reduction.[4] The Honorable John Youngblood heard the case in Milam County on April 30, 2015.[5] Appellant's bond on each count of manslaughter was reduced to one hundred and fifty thousand ($150,000.00) dollars. Additionally, Appellant's bond on the assault causing

---

[1] I C.R. 3

[2] I C.R. 8

[3] *Id.*

[4] Cite to CR for filing of Writ

[5] Cite to CR for setting for hearing

serious bodily injury charge was reduced to twenty thousand ($20,000.00) dollars.

Appellant timely filed a Notice of Appeal in each case on May 8, 2015.

## ISSUES PRESENTED

I.    Whether the trial court's reduction of Appellant's bail was an abuse of discretion.

## STATEMENT OF THE FACTS

Robie Lee Lawhon (hereafter Appellant) was arrested following a car wreck on March 29, 2015 resulting in the deaths of two individuals and grievous injury to a third person.[6] Appellant was indicted for two counts of felony manslaughter as well as one count of aggravated assault.[7] On April 23, 2015, Appellant filed an *Application for Habeas Corpus Bail Reduction Motion* on all three pending cases.[8]

The hearing was held on at the 20th District Court in Milam County before the Honorable John Youngblood.[9] Appellant called a number of witnesses in support of his motion.[10] Appellant called his mother, Catherine Jean Martinez; a family friend, Linda Matysek; the owner of Rocking R and Twin Pistol Bail Bonds, Lisa Roden.[11] The State did not call any witnesses.

First, Appellant called Catherine Jean Martinez. Ms. Martinez testified that she lives in Rockdale, Texas.[12] She further testified that Appellant has primarily resided at either her or her mother's (Appellant's grandmother's) residences in

---

[6] I C.R. 3

[7] I C.R. 3, 4

[8] I C.R. 9

[9] I R.R. 4

[10] *Id.* at 1-23.

[11] *Id.*

[12] *Id.* at 8.

1

Rockdale throughout his life.[13] Ms. Martinez testified that Appellant completed high school in Rockdale, participated in higher education in Waco, and has steadily maintained employment in Rockdale and Milano since then.[14] She testified that although appellant was living with his grandmother at the time of the car wreck, Appellant would live with her (Appellant's mother) if released on bond.[15] She testified that she would ensure that Appellant had the necessary transportation to make any necessary appearance at court.[16] Ms. Martinez acknowledged that Appellant was previously on deferred adjudication in the past and that Appellant did not miss any court setting or probation meetings.[17]

During Ms. Martinez's cross examination, the State asked Ms. Martinez about her efforts to make the bond as it was currently set.[18] Ms. Martinez testified that she was having trouble getting a loan.[19] Ms. Martinez maintained that her present employment with a loan company presented a significant barrier to her ability to get a loan – she testified that other loan companies will not loan to

---

[13] *Id.*

[14] *Id.* at 8-9.

[15] *Id.* at 9.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 13.

[19] *Id.*

employees of their competition.[20] Ms. Martinez also testified that she owns a 1.3 acre piece of property with a trailer on it.[21] She testified that she is not able to use it as collateral for a loan due to the cost of obtaining a land survey. Finally, Ms. Martinez testified that her extended family lacks the resources necessary to secure Appellant's bond.[22]

Next, Appellant called Linda Matysek.[23] Ms. Matysek testified that she has known Appellant for a long time and that she believes that his reputation in the community is "fine."[24] Ms. Matysek also testified that she would be willing to transport Appellant to court and that it is her belief that he would in fact show up.[25]

Finally, Appellant called Lisa Roden.[26] She testified primarily that any bond over $50,000 is a great financial liability for her, and, as such, she is unable to write a bond for Appellant at this time.[27] Ms. Roden testified that it would "put [her] out of business" should anything go wrong on a bond over $50,000.[28] She

---

[20] *Id.*

[21] *Id.* at 14.

[22] *Id.*

[23] *Id.* at 15.

[24] *Id.* at 16, 17.

[25] *Id.*

[26] *Id.* at 19.

[27] *Id.* at 20.

[28] *Id.*

3

further testified that it is her belief that a bond of $5,000 would be appropriate to secure Appellant's appearance in court.

At oral argument, the State discussed the maximum range of punishment for the indicted offenses and also mentioned that the sentences could be stacked.[29] After argument, the trial court granted Appellant partial relief in the form of a reduction of bond from a total of $600,000 to a final total of $320,000.[30] The trial court mentioned, when making the reduction, that it wanted to give Appellant some "credit" for Appellant's lack of "extensive criminal history," appearances in this matter and in the past, and Appellant's cooperation with law enforcement.[31] However, the trial court observed that there are "competing interests" in making a ruling in a bond hearing. As such, the trial court stated that it could not go any lower from the reduction to $320,000 due to the fact that "two people lost their lives and others were seriously injured."[32]

---

[29] *Id.* at 24.

[30] *Id.* at 25.

[31] *Id.* at 24, 25.

[32] *Id.* at 25.

4

## SUMMARY OF THE ARGUMENT

The trial court's conclusion is supported by the record when taken as a whole. It shows that the trial court balanced the competing interests in the case pursuant to the necessary criteria. This fact shows that the trial court's ruling was neither arbitrary nor unreasonable, and, thus, not an abuse of discretion.

Case law shows that Appellant is not entitled to relief for a number of reasons. Appellant's mother's testimony concerning Appellant's finances and ability to make bail is inconclusive as a matter of law. Appellant's failure to testify and introduce evidence concerning personal financial resources and ability to make bail makes any relief by this Court unwarranted.

# ARGUMENT

## ISSUE ONE: WHETHER THE TRIAL COURT ABUSED ITS DISCRETION

The standard of review for reviewing bail settings is whether the trial court abused its discretion.[33] The test for an abuse of discretion is "whether the court acted without reference to any guiding rules and principles [and] whether the act was arbitrary or unreasonable."[34] The burden of proof is on the defendant who claims bail is excessive.[35]

The United States Constitution and the Texas Constitution prohibit excessive bail.[36] In exercising its discretion in setting bail, the trial court is guided by the following rules:

1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2) The power to require bail is not to be so used as to make it an instrument of oppression.
3) The nature of the offense and the circumstances under which it was committed are to be considered.
4) The ability to make bail is to be regarded, and proof may be taken on this point.
5) The future safety of a victim of the alleged offense and the community shall be considered.[37]

---

[33] *Ex parte Ruiz*, 129 S.W.3d 751, 753 (Tex. App. Houston 1st Dist. 2004), *quoting Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981).

[34] *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

[35] *Ex parte Ochoa*, 2004 Tex. App. LEXIS 5817, *3 (Tex. App. Houston 1st Dist. July 1, 2004).

[36] U.S. Const. amend. VIII; Tex. Const. art. I, § 13.

Furthermore, the "circumstances to be considered in determining the amount of bond include the accused's work record, family and community ties, length of residency, prior criminal record, and conformity with the conditions of any previous bond, as well as the existence of any outstanding bonds and aggravating circumstances involved in the charged offense.[38] The trial court may also consider "the range of punishment for the charged offense[.]"[39] Finally, the ability or inability of the accused to make bail is a factor to be considered, but that factor alone does not control in determining the amount of bail.[40]

Here, there is no evidence on the record that the trial court abused its discretion in granting partial relief to Appellant. There is nothing to suggest that the trial court acted arbitrarily, unreasonably, or without reference to proper guidelines. The trial court heard testimony from three people who established *most* of the criteria that guide the trial court's exercise of discretion. The record as a

---

[37] *Ex parte Jozwiak*, 2005 Tex. App. LEXIS 402, *7 (Tex. App. Dallas Jan. 20, 2005), *citing Ex Parte Welch*, 729 S.W.2d 306, 309 (Tex. App.—Dallas 1987, no pet.); TEX. CODE CRIM. PROC. ANN. ART. 17.15.

[38] *Id.*, *citing Ex Parte Rubac*, 611 S.W.2d 848, 849-50 (Tex. Crim. App. [Panel Op.] 1981).
[39] *Id.*

[40] *See Ex Parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980).

whole supports the trial court's conclusion and shows that the trial court properly balanced the all the "competing interests" in this matter.[41]

Ms. Martinez's testimony established much of the necessary information for the trial court. Ms. Martinez showed Appellant's 'family and community ties' and 'length of residency' through her testimony regarding where Appellant was from and his history there.[42] Her testimony also established Appellant's 'work record' when she mentioned that Appellant's work history in Rockdale and Milano.[43] Ms. Martinez also discussed Appellant's 'prior criminal record' and 'conditions of any previous bond' when she discussed Appellant's prior charge and performance during deferred adjudication.[44]

On cross examination, the State questioned Ms. Martinez concerning finances and property ownership.[45] Ms. Martinez testified that she is currently employed at a loan company. Due to her employment, she stated it is difficult to obtain a loan from other loan companies. Ms. Martinez also testified that she cannot obtain a loan from the bank using her property as collateral because the cost of obtaining a survey of the land, which she maintains is necessary to get the loan,

---

[41] I R.R. 24

[42] *Id.* at 8-10.

[43] *Id.*

[44] *Id.* at 11.

[45] *Id.* at 13-4.

8

exceeds the amount she would be able to get on the loan.[46] Finally, Ms. Martinez was questioned regarding her family's ability to pay – she testified that they were unable to contribute.[47]

Appellant's next witness, Linda Matysek, corroborated some of Ms. Martinez's testimony. Ms. Matysek testified that she has known Appellant for a great deal of time and that it is her belief that Appellant's reputation in the community is "fine."[48] This supports Ms. Martinez's testimony regarding Appellant's 'family and community ties.' On cross examination, the State questioned Ms. Matysek about the nature of the offense.[49] Ms. Matysek testified that she understood that there was a "car accident" and she acknowledged that two people were killed.[50]

Finally, Appellant called Lisa Roden from RR Bail Bonds and Twin Pistol Bail Bonds. Ms. Roden testified that it is a liability for her to write a bond for any amount over $50,000.[51] Ms. Roden also testified that it is her belief that a lower

---

[46] *Id.* at 14.
[47] *Id.*
[48] *Id.* at 17.
[49] *Id.* at 18.
[50] *Id.*
[51] *Id.* at 20.

bond would be sufficient to show secure Appellant's appearance in court.[52] It is also important to note that the State mentioned the maximum range of punishment at closing argument.[53]

Examining the points made at the bond hearing, the record before the trial court, taken as a whole, established most of the criteria for the trial court listed *supra*. Evidence regarding the 'accused's work record', 'family and community ties', 'length of residency', 'prior criminal record', 'conformity with the conditions of any previous bond', 'existence of any outstanding bonds', 'aggravating circumstances involved in the charged offense', and 'the maximum range of punishment' were all present. The trial court even acknowledged after oral argument that there are "competing interests" in this case – which serves as an implicit acknowledgement of the trial court's balancing of the criteria that guide the trial court's setting of bond.[54] The trial court even explicitly stated that it was giving Appellant "credit" for certain things that he did. Furthermore, the trial court granted partial relief to Appellant. The bonds were reduced by a total of $280,000, which is almost half of the original total amount. However, the trial court also

---

[52] *Id.* at 21.

[53] *Id.* at 24.

[54] *Id.*

noted the nature of the "extremely serious charges" against Appellant.[55] All the foregoing analysis shows (1) that the record, when taken together as a whole, supports the trial court's conclusion and (2) that the trial court was indeed aware of and in fact used the guidelines necessary to exercise its discretion. Thus, the trial court's grant of partial relief to Appellant could not have been an unreasonable or arbitrary abuse of discretion.[56]

As mentioned *supra*, Appellant introduced evidence in support of most of the necessary criteria that are relevant in a hearing for a bond reduction. However, Appellant failed to introduce one critical piece of evidence: Appellant did not testify in order to establish Appellant's personal resources and ability to make bond. In *Ex Parte Chavfull*, the court heard an accelerated appeal from an order denying a reduction in bail.[57] At the hearing, Chavfull's mother testified that she lacked the resources to post bond.[58] She also testified that her family could perhaps come up with around $1,000. She also stated that Chavfull was not working and

---

[55] *Id.* at 24-5; *See also Ex parte Jozwiak*, 2005 Tex. App. LEXIS 402, *1 (Tex. App. Dallas Jan. 20, 2005) (holding that given the serious nature of the offense and appellant's lack of ties to the community, the amount of bond was warranted).

[56] *See Ex parte Leonides*, 2002 Tex. App. LEXIS 944, *1 (Tex. App. Austin Feb. 7, 2002) (holding that the trial court's grant of partial relief in reducing the bond from $250,000 to $175,000 and briefly detailing the reasons behind the reduction was not an abuse of discretion).

[57] *Ex Parte Chavfull*, 945 S.W.2d 183 (Tex. App. San Antonio 1997).

[58] *Id.* at 186.

could not come up with enough money to make bond.[59] Despite that testimony, the court ruled on appeal that her testimony concerning her son's financial resources was "inconclusive."[60] The court went on to remark:

> "We don't know what his bank account is, if he has a bank account, if he owns stocks. We know nothing about the defendant's financial condition, that is his financial condition. It is not incumbent upon the family to make bond, although, in reality, they often do. He has not proven the bond is excessive as to Donte Chavfull."[61]

The court finally ruled in *Chavfull* that appellant's failure to provide such evidence, among other things and including his mother's "inconclusive" testimony, precluded him from relief.[62]

The facts in *Chavfull* are analogous to the instant case. Ms. Martinez testified about her resources and those of her family.[63] She even told the trial court that Appellant is currently employed in Milano.[64] However, Appellant never personally testified in order to introduce evidence of Appellant's personal

---

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id., See also Eggleston v. State*, 917 S.W.2d 100, 102 (Tex. App. San Antonio 1996) (discussing how mother's testimony re: appellant's finances was inconclusive).

[63] I R.R. 8-15

[64] I R.R. 9

resources and ability to make bond. As such, Ms. Martinez's testimony should be as inconclusive here as it was in *Chavfull*.[65]

Appellant cites to *Ex Parte Faye Bufkin, Juan De la Cruz and Richard Bowker* and *Ex Parte Rubac* in his brief.[66] In those cases, appellants put on a great deal of evidence showing why bail was excessive. There is one critical piece of evidence present in those cases that is very much lacking in the instant case – that being testimony from the accused regarding personal financial resources and ability to make bail. In *Bufkin*, "appellants Bowker **and Bufkin** [emphasis added] and members of their families testified that efforts to make bond in the sum of $200,000 had been fruitless and that the highest bail each could make was $20,000.00."[67] It is clear that Bufkin testified as to her financial resources ability to make bail. In *Rubac*, Rubac testified that he had only $4,000 available to him.[68] In the instant case however, testimony by Appellant is not present and therefore nothing to prove that the bond is excessive *as to the accused*. Thus, considering

---

[65] *See Ex Parte Pequeno-Flores*, 2003 Tex. App. 9673, 2003 WL 22682520 (2003) (holding that Appellant did not carry his burden to show that bail was set higher than necessary to assure presence at trial or that it was being used as an instrument of oppression); *Ex parte Ochoa*, 2004 Tex. App. LEXIS 5817, *3 (Tex. App. Houston 1st Dist. July 1, 2004) (holding that the serious nature of the offense and appellant's failure to demonstrate own lack of resources did not meet burden)

[66] *Ex Parte Faye Bufkin, Juan De la Cruz and Richard Bowker*, 553 S.W.2d 116 (Tex. Crim. App. 1977); *Ex parte Rubac*, 611 S.W.2d 848 (Tex. Crim. App. 1981).

[67] *Bufkin*, 553 S.W.2d at 117.

[68] *Rubac*, 611 S.W.2d at 849.

this fact and the case law discussed *supra*, the trial court's ruling in the instant case was not an abuse of discretion.

In conclusion, an analysis of the record and case law shows that the trial court's grant of partial relief to Appellant was not an abuse of discretion. The record as a whole support's the trial court's conclusion and its statements show that it considered the guidelines necessary to use its discretion. As such, the ruling was neither arbitrary nor was it unreasonable. Finally, *Chavfull*, and other cases cited in support of it, shows that reduction of bail is unwarranted where, among other things, Appellant fails to introduce testimony regarding his financial resources and ability to make bail.

/s/Joseph P. Johnson
Joseph P. Johnson

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellee asks the court to affirm the trial court's ruling in Cause numbers 03-15-00277-CR, 03-15-00265-CR, and 03-15-00288-CR.

## CERTIFICATE OF SERVICE

This is to certify that on August 21, 2015, a true and correct copy of the above and foregoing document was served on Tyler Pennington, counsel for the Appellant, by electronic transmission at tyler@penningtonlawpllc.net. Electronic transmission was reported as complete.

/s/Joseph P. Johnson
Joseph P. Johnson

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4
Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitations of TEX. R. APP. P. 9.4(i) because this brief contains 3,321 words, excluding the parts of the brief exempt by TEX. R. APP. P. 9.4(i)(1).

2. This brief complies with the typeface requirements and the type style requirements of Tex. R. App. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using Microsoft Word in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

3. The electronic file is virus and malware free.


_____/s/Joseph P. Johnson_____
Signature of Filing Party

_____Joseph P. Johnson_____
Printed Name

Milam County District Attorney's Office
Firm

_____August 21, 2015_____
Date