

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00249-CR

EX PARTE JAMELL D. BROOKS

----------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## OPINION

----------

Appellant Jamell D. Brooks appeals from the trial court's denial of his request to reduce his pretrial bond from $750,000. The primary purpose of an appearance bond is to secure the defendant's presence at trial on the offense charged.[1] Accordingly, bail should be high enough to give reasonable assurance that the defendant will appear at trial, but it should not operate as an instrument

---

[1]*Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977).

of oppression.[2]  The burden of proof is on the defendant to show that the bail, as set, is excessive.[3]

Article 17.15 of the Texas Code of Criminal Procedure sets forth the following criteria for establishing a defendant's bond:

> 1.  The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2.  The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3.  The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4.  The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5.  The future safety of a victim of the alleged offense and the community shall be considered.[4]

In addition to these factors, we find it instructive that the Texas Court of Criminal Appeals, in determining whether an appeal bond set by the trial court was excessive, stated that the court should also weigh the following factors:  (1) the accused's work record; (2) the accused's family ties; (3) the accused's length of residence; (4) the accused's prior criminal record, if any; (5) the accused's conformity with the conditions of any previous bond; (6) the existence of

---

[2]*Id.*

[3]*Id.*

[4]Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005).

outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense.[5]

The State's version of the facts of the underlying offense is contained in State's Exhibit 1, the probable cause affidavit executed by Detective Allen Killingsworth that sets out the information he had regarding the alleged assault of Sergeant Brian Sheehan. Killingsworth stated that Sheehan had been on patrol and had responded to a complaint that someone had fired shots into the air at an apartment complex. When Sheehan arrived, he saw Appellant arguing with a woman. A bystander told Sheehan that Appellant had fired the shots. Appellant began walking away, and Sheehan saw a gun in Appellant's hand. Sheehan told Appellant to stop, but Appellant continued to walk and went into an apartment. Sheehan drew his duty weapon and followed him. Sheehan prevented Appellant's closing the door by pushing the door open and going into the apartment. Sheehan saw the gun still in Appellant's hand. Killingsworth stated that Sheehan saw Appellant start to raise the gun and that Sheehan raised his service revolver and fired at Appellant twice. At least one shot struck Appellant, injuring his liver. Appellant did not fire.

The record reflects that Appellant is thirty-two years old. At the time of his arrest for aggravated assault of a public servant (Sheehan), a noncapital first-degree felony, Appellant worked full-time for the Texas Department of

---

[5]*Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981).

Transportation, picking up trash on the side of the highway and painting lines when necessary. He earned $10.70 per hour. He had savings of $1,000 and two paychecks totaling about $700. He owned no real estate, no car, no motorcycle, and no other vehicle and had no credit cards, furniture, or jewelry that he could sell or borrow against. Neither he nor his family could come up with the $75,000 that the bail bond company said he would need in order to post the $750,000 bail bond. Appellant indicated that he could pay a bondsman $2,500 if the trial court would reduce his bail to $25,000.

Appellant has two prior misdemeanor convictions for driving while intoxicated (DWI) and possession of marijuana, both in 2010. He testified that he had been released on bond in the DWI case and had appeared for all his court settings and for all his appointments with his attorney. He also testified that after he was convicted, he surrendered to the jail to serve his two-day sentence.

Appellant testified that if he is released on bail, he intends to rent a house through a person from whom he has rented in the past. The record reflects that Appellant has lived in Wichita Falls at least since April 2010, although it is unclear where he lived before then and where his family lives. The State presented no evidence that Appellant is a flight risk or that he has outstanding bonds or warrants.

Appellant has been continuously incarcerated since his September 10, 2011 arrest. Trial is specially set for November 26, 2012. Appellant is

4

represented by a court-appointed attorney from the Wichita County Public Defender's Office.

Weighing the evidence in the record regarding both the statutory criteria we are to consider as well as the additional factors suggested in *Rubac*, and considering the conditions of bail that the trial court is empowered to impose[6] to satisfy the goals of bail, we hold that the trial court abused its discretion by denying Appellant's motion to reduce his pretrial bail.

Accordingly, we reverse the trial court's denial of Appellant's motion to reduce bail and remand this case to the trial court to set a reasonable bail; to determine what conditions, if any, to impose; and to allow both the State and Appellant the opportunity to present any additional evidence or argument that the trial court deems appropriate to assist it in determining reasonable bail and conditions, if any.[7]

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

GABRIEL, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  July 26, 2012

---

[6]*See* Tex. Code Crim. Proc. Ann. art. 17.40 (West 2005).

[7]*See* Tex. R. App. P. 43.6.



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00249-CR

EX PARTE JAMELL D. BROOKS

----------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## DISSENTING OPINION

----------

Because I believe it was within the zone of reasonable disagreement for the trial court to set a high bond for a person with little to no proven ties to the community who is held pending trial for assaulting a police officer with a deadly weapon, I dissent to the majority's reversing the trial court's decision.

Setting bail is committed to the sound discretion of the trial court, but the exercise of that discretion is governed by law. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13; Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005). In setting bail, the trial court must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at

trial.  *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd).

Both the federal and state constitutions prohibit excessive bail. *See* U.S. Const.

amend. VIII; Tex. Const. art. I, § 13.  Bail is excessive if it is "set in an amount

greater than is reasonably necessary to satisfy the government's legitimate

interests." *Beard*, 92 S.W.3d at 573.  In addition to the constitutional prohibition

against excessive bail, the Texas Legislature has imposed the following statutory

requirements:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15.

In setting the amount of bail, the trial court may also give consideration to

such factors as (1) the accused's work record; (2) the accused's family and

community ties; (3) the accused's length of residency; (4) the accused's prior

criminal record; (5) the accused's conformity with previous bond conditions; (6)

the existence of other outstanding bonds, if any; and (7) aggravating

circumstances alleged to have been involved in the charged offense.  *See*

*Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel Op.] 1981)).

We review the trial court's ruling on a request to reduce bail under an abuse-of-discretion standard. *See Rubac*, 611 S.W.2d at 850; *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We must not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Clemons*, 220 S.W.3d at 178.

In a habeas case, the writ applicant bears the burden of proving facts that would entitle him to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993). The burden of proof is upon an applicant who claims bail is excessive. *See Rubac*, 611 S.W.2d at 849; *Milner v. State*, 263 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Here, I would hold that Brooks did not meet his burden.

**Statutory factors**

***Sufficient bail to assure appearance but not oppress***

The first two statutory factors are interrelated. The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). Thus, the amount of bail must be high enough to give reasonable assurance that the accused will appear as required. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). However, while bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument of oppression. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). This occurs when the trial court sets bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial or appeal. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.).

There are several older cases involving different offenses in which the reviewing court reduced the bail amount after finding that the trial court's bail amount was excessive. *See Ludwig v. State*, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991) (in murder case, reducing bail amount from $1,000,000 to $50,000); *Ivey*, 594 S.W.2d at 100 (Tex. Crim. App. 1980) (in aggravated robbery case, reducing bail amount from $250,000 to $50,000); *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977) (in capital murder case, reducing bail amount from $100,000 to $20,000); *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim.

4

App. 1977) (in case involving conspiracy to commit capital murder, reducing bail amount from $150,000 to $15,000); *Smithwick v. State*, 880 S.W.2d 510, 511 (Tex. App.—San Antonio 1994, no pet.) (in case involving murder and injury to child, reducing bail amount from $500,000 to $100,000); *Ex parte McDonald*, 852 S.W.2d 730, 735–36 (Tex. App.—San Antonio 1993, no pet.) (in capital murder case, reducing bail amount from $1,000,000 to $75,000). However, as commentators as well as one of our sister courts have observed, "'Case law is of relatively little value in addressing the ultimate question of the appropriate amount of bail in a particular case' because appellate decisions on bail matters are often brief and avoid extended discussions, and because the 'cases are so individualized that generalization from results reached in others is difficult.'" *Beard*, 92 S.W.3d at 571 (citing 41 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 16.51 (2d ed. 2001)). Finding significant factual differences between the above cases and the case before us, I do not find those cases to be persuasive here.[1]

---

[1]For example, in *Ludwig*, the defendant had a child-custody proceeding pending which would require his presence in the jurisdiction, and he had several close relatives who were long-time Texas citizens and were willing to sign a bond ensuring his appearance at trial. 812 S.W.2d at 324. In *Ivey*, the defendant was a lifetime resident of the city in which he was being tried, had a family and owned a house in that city, and both his parents and his wife's parents were from that city. 594 S.W.2d at 99–100. In *Vasquez*, it was undisputed that the defendant was indigent, and, although there was little evidence presented concerning the circumstances surrounding the offense, it appeared that the defendant was, at most, responsible as a party to the offense. 558 S.W.2d at 479–80. The other cases cited above are similarly distinguishable from the facts of this case.

*Nature of offense*

The third factor under article 17.15 is the nature of the offense for which the defendant is charged and the circumstances under which it was committed. Brooks is accused of aggravated assault of a peace officer. Included in the record is the probable-cause affidavit supporting the arrest warrant. The affidavit describes in detail the allegations against Brooks, including that he had apparently discharged a firearm into the air in front of an apartment complex, had ignored a responding police officer's commands to halt, and had raised a firearm toward the responding officer. Thus, the record reflects that the nature of the offense and the alleged circumstances surrounding its commission are very serious.

When reviewing the appropriate bail for a particular offense, appellate courts often compare bail amounts in other cases involving offenses of the same degree. This is because such offenses carry the same punishment range, which is a proper consideration in determining the nature of the offense charged. *See Charlesworth*, 600 S.W.2d at 317; *Vasquez*, 558 S.W.2d at 480; *Maldonado*, 999 S.W.2d at 95.

Brooks stands charged for aggravated assault of a police officer. As alleged, the offense is a first-degree felony. *See* Tex. Penal Code Ann. § 22.02(b)(2)(B) (West 2011). The punishment for a first-degree felony is imprisonment for five to ninety-nine years or life, plus a fine not to exceed $10,000. *Id.* § 12.32. Perhaps reflecting the wide range of punishment, Texas

6

courts have approved bail amounts as low as $1,000 and as high as $1,000,000 for first-degree felony offenses. *See, e.g.*, *Ex parte Carson*, 215 S.W.3d 921, 924 (Tex. App.—Texarkana 2007, no pet.) (in case involving first-degree felony offense of possession of controlled substance, setting bail at $1,000); *Gonzalez v. State*, 996 S.W.2d 350, 353 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (in case involving aggravated robbery, approving bail set at $90,000); *see also Pharris v. State*, No. 14-06-00788-CR, 2006 WL 3313323, at *1, *2 (Tex. App.—Houston [14th Dist.] Nov. 16, 2006, pet. ref'd) (mem. op., not designated for publication) (in case involving offense of first-degree felony theft, approving bail set at $500,000); *Tran v. State*, No. 01-06-00035-CR, 2006 WL 1771815, at *1, *5 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.) (mem. op., not designated for publication) (in case involving drug possession, approving bail set at $800,000 for cocaine possession and $500,000 for marihuana possession); *Ex parte Cuevas*, No. 11-03-00402-CR, 2004 WL 527960, at *1, *5 (Tex. App.—Eastland Mar.18, 2004, no pet.) (not designated for publication) (in case involving offense of engaging in organized criminal activity to commit theft, approving bail set at $1,000,000). The bail amount set in this case, $750,000, is within the range of bail amounts approved for other first-degree felonies.

### *Ability to make bail*

The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive. *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App.

7

1980); *Maldonado*, 999 S.W.2d at 96. This is true even if the accused is determined to be indigent. *Charlesworth*, 600 S.W.2d at 317. If the ability to make bail in a specified amount controlled, the role of the trial court in setting bail would be unnecessary and the accused would be able to set his own bail. *Hunt*, 138 S.W.3d at 506.

Brooks presented some evidence that he could not afford to post bail. He testified that the bond company would expect him to put up $75,000 but that although he worked for the department of transportation and made $10.70 an hour, he had no assets and only $1,700 in savings and that neither he nor his family could come up with $75,000. He thought that he could raise enough to post a $25,000 bond.

### Future safety of the victim and the community

The final statutory factor examines the safety of the victim and the community if the defendant were to be released on bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). In this case, it appears that the potential victim, Officer Sheehan, shot Brooks twice as Brooks raised his weapon. But that does not diminish the importance of the future safety of the community as a factor. The probable cause affidavit indicates that Brooks fired his weapon into the air in front of an apartment complex, walked away from a police officer despite the officer's repeated commands to stop, and then raised a weapon at the officer. These actions bode ill for the future safety of the community should Brooks be released within it on a lower bond.

Based on the above, the trial court could have found that Brooks was a danger to the community, and the $750,000 bail was necessary to ensure its safety. On this record, I cannot conclude that the trial court abused its discretion by doing so.

**Other factors**

There is very little, if any, evidence in the record about Brooks's family, work record, length of residency, and other ties to the area. Brooks testified that he has no house or real property, that he was "trying to get a house through Vida Cook," and that he would be willing to stay in the county until the end of trial. But there is no evidence showing who Vida Cook is or where this house would be or even if Vida Cook would be willing to provide the house for Brooks. There is no evidence showing how long Brooks had held his job, how long he lived in the community or whether he had any family who tied him to the community. In this habeas proceeding, Brooks bears the burden of proof to show that the bail, as set, is excessive. Based on the lack of evidence on these factors, the trial court could have concluded that Brooks's ties to the community were insufficient to assure his appearance at trial. *See Hunt*, 138 S.W.3d at 505.

As for the remaining factors, Brooks testified to a prior criminal history of DWI and that he had complied with bond conditions in that case. There is no evidence of the existence of other outstanding bonds.

9

## Conclusion

On the above record, I would not conclude that the district court abused its discretion by denying Brooks's request to reduce bail. Although there is some evidence in the record that Brooks cannot afford the current bail amount, it does not establish in my view that the trial court abused its discretion by not lowering the bond amount. Moreover, even assuming that Brooks could not afford bail, this factor is not controlling. *See Hunt*, 138 S.W.3d at 506.

The other factors weigh in favor of the trial court's decision. The record does not reflect that the trial court refused to reduce bail in order to make it an "instrument of oppression." Although Brooks has a prior criminal history for a misdemeanor, the offense of which he stands charged and the alleged circumstances surrounding their commission are very serious. The bail amount is within the range Texas courts have approved for first-degree felonies. The record indicates that Brooks is a danger to the community.

In sum, I would affirm the trial court's order and hold that Brooks has failed to satisfy his burden to prove that bail in this case was excessive, i.e., that it was "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *See Beard*, 92 S.W.3d at 573. Because the majority does not so hold, I dissent.

LEE GABRIEL
JUSTICE

DELIVERED: July 26, 2012