# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-19-00695-CR
NO. 03-19-00715-CR

---

**Ex parte Matthew Hopkins**

---

**FROM THE 424TH DISTRICT COURT OF BURNET COUNTY**
**NOS. 49873 & 49920, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Matthew Hopkins, who is confined in jail after his arrests for the offenses of evading detention or arrest with a vehicle and possession of a controlled substance, filed pretrial applications for writ of habeas corpus seeking a reduction in his bail, which was set at $50,000 for the evading offense and $10,000 for the drug-possession offense. *See* Tex. Code Crim. Proc. arts. 11.08, 11.24; *see also* Tex. Penal Code § 38.04(a); Tex. Health & Safety Code § 481.115(a). Following an evidentiary hearing, the trial court denied the applications. In a single point of error on appeal, appellant asserts that the trial abused its discretion in denying habeas relief because the amount of bail is excessive. We will affirm the trial court's orders as to both offenses.[1]

---

[1] The order denying appellant's habeas application seeking a bail reduction for the evading offense is the subject of appeal number 03-19-00695-CR. The order denying appellant's habeas application seeking a bail reduction for the drug-possession offense is the subject of appeal number 03-19-00715-CR.

**DISCUSSION**

"'Bail' is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond." Tex. Code Crim. Proc. art. 17.01. With certain exceptions not applicable here, the Texas Constitution guarantees that "[a]ll prisoners shall be bailable by sufficient sureties." Tex. Const. art. I, § 11; *see* Tex. Code Crim. Proc. art. 1.07. Both the federal and state constitutions prohibit "excessive" bail. U.S. Const. amend. VIII; Tex. Const. art. I, § 13; *see* Tex. Code Crim. Proc. art. 1.09. Bail is considered excessive if it is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd).

The Code of Criminal Procedure commits the setting of bail to the discretion of the trial court or magistrate, but sets forth five rules that, together with the constitution, govern the exercise of that discretion. Tex. Code Crim. Proc. art. 17.15; *see Beard*, 92 S.W.3d at 568. Bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, but not so high as to make it an instrument of oppression. Tex. Code Crim. Proc. art. 17.15(1), (2); *see Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977) (stating that primary purpose of pretrial bail is to secure presence of defendant). The nature of the offense and the circumstances under which it was committed are factors to be considered in setting bail, as is the future safety of the community and the victim of the alleged offense. Tex. Code Crim. Proc. art. 17.15(3), (5). The defendant's ability to make bail also must be considered but is not of itself controlling. *Id.* art. 17.15(4); *Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981). In addition, in applying article 17.15, consideration may be given to such evidentiary matters as the defendant's work record, the defendant's ties to the community, the

defendant's previous criminal record, the defendant's conformity with previous bond conditions and record of appearances in the past, the existence of other outstanding bonds, and aggravating factors involved in the offense. *Ex parte Rubac,* 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981); *Beard*, 92 S.W.3d at 568.

The burden is on the defendant to prove that bail is excessive in light of the above factors. *Rubac*, 611 S.W.2d at 849; *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); *Beard*, 92 S.W.3d at 568; *see, e.g.*, *Gentry,* 615 S.W.2d at 231 (reducing bail amount after court was "completely satisfied that petitioner discharged her burden of showing her entitlement" to bail reduction). We review the trial court's ruling on a request for a bail reduction for an abuse of discretion. *Rubac*, 611 S.W.2d at 850; *Beard*, 92 S.W.3d at 568; *see Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013) (stating that "the decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail 'will not be disturbed by this Court in the absence of an abuse of discretion'" (quoting *Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981)). Thus, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.); *Beard*, 92 S.W.3d at 573; *see Ex parte Brooks*, 376 S.W.3d 222, 225 (Tex. App.—Fort Worth 2012, pet. ref'd) ("To determine whether the trial court abused its discretion [in ruling on a request to reduce bail], we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.").

The "primary factors" to consider when evaluating the reasonableness of bail are the nature of the offense and the punishments that can be imposed for committing it. *See Rubac*, 611 S.W.2d at 849; *Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston [14th Dist.]

3

2016, no pet.); *see also Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980) ("Taking into consideration the 'nature of the offense' necessarily involves the punishment permitted under the law."). The offenses at issue here are evading detention or arrest with a vehicle, a third-degree felony, *see* Tex. Penal Code § 38.04(b)(2)(A), and possession of a Penalty Group 1 controlled substance in an amount of less than one gram, a state-jail felony, *see* Tex. Health & Safety Code § 481.115(b). The record does not reveal much about the circumstances of the offenses.

However, the indictment for the evading offense contains three separate paragraphs alleging that, while using a motor vehicle, appellant "intentionally fle[d]" from three different police officers who were attempting to detain or arrest him. The indictment also alleges that appellant used or exhibited a deadly weapon, the motor vehicle, during the offense. Further, the indictment contains an enhancement paragraph alleging two prior felony convictions for delivery of a controlled substance and injury to a child. At the writ hearing, appellant admitted that he had previously been convicted for those offenses. Based on these allegations, appellant faces a punishment range, enhanced pursuant to the repeat-offender provision of the Penal Code, of a second-degree felony. *See* Tex. Penal Code § 12.42(a). Thus, appellant could face up to twenty years in prison for this offense if convicted. *See id.* § 12.33 (establishing punishment range of two to twenty years' imprisonment and fine up to $10,000 for second-degree felony offenses).

Regarding the drug-possession offense, appellant testified at the writ hearing that he had not yet been indicted for that offense, and no indictment appears in the record. Thus, the only information in the record about this offense is appellant's averment in his habeas application that he was arrested for possession of a Penalty Group 1 controlled substance in an

4

amount of less than one gram. But given the enhancement paragraph in the indictment filed in the evading case and appellant's admissions at the writ hearing that he had been convicted for the prior offenses alleged, upon indictment for possession of a controlled substance, appellant likely will face a punishment range, enhanced pursuant to the state-jail repeat-offender provision of the Penal Code, of a third-degree felony. *See id.* § 12.425(a). Thus, appellant could face up to ten years in prison for this offense if convicted. *See id.* § 12.34 (establishing punishment range of two to ten years' imprisonment and fine up to $10,000 for third-degree felony offenses).

Concerning the future safety of the community and alleged victim of the offenses, neither offense here involves a specific victim, but both implicate the safety of the community as a whole. While this factor does not appear to have been a significant issue at the hearing, the trial judge expressed that the evading offense "is a really serious offense in [his] mind" that "put a lot of innocent people at risk." Also, given the fact that the evading offense alleged the use of a motor vehicle as a deadly weapon, the trial court could have reasonably inferred that appellant's access to a motor vehicle while out on bond could pose at least some risk to the safety of the community.

The ability of a defendant to post bail is a factor to be considered, but the inability to make the bail set does not automatically render the bail excessive. *Lawhon v. State*, No. 03-15-00265-CR, 2015 WL 7424763, at *2 (Tex. App.—Austin Nov. 20, 2015, no pet.) (mem. op., not designated for publication); *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.— Fort Worth 2003, no pet.); *see Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980). This is true even if the defendant is determined to be indigent. *Lawhon*, 2015 WL 7424763, at *2; *see Charlesworth*, 600 S.W.2d at 317 ("Although the ability to make bail is a factor to be considered, ability alone, even indigency, does not control the amount of bail."). The

defendant's ability to make bail is only one factor to be considered in determining the appropriate amount of bail. *Dupuy*, 498 S.W.3d at 234; *see* Tex. Code Crim. Proc. art. 17.15(4).

To demonstrate an inability to make bail, a defendant generally must establish that his funds and his family's funds have been exhausted. *Dupuy*, 498 S.W.3d at 234–35; *Ex parte Soria*, No. 09-15-00050-CR, 2015 WL 3898034, at *2 (Tex. App.—Beaumont June 24, 2015, no pet.) (mem. op., not designated for publication); *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Moreover, a bail reduction is not favored when the defendant makes vague references to inability to make bail without detailing his specific assets and financial resources. *Ex parte Coleman*, No. 09-17-00484-CR, 2018 WL 1415520, at *2 (Tex. App.—Beaumont Mar. 21, 2018, no pet.) (mem. op., not designated for publication); *Lawhon*, 2015 WL 7424763, at *2; *Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

At the writ hearing, appellant testified minimally regarding his inability to make bail, asserting that he was "not even close" to being able to make the bails as set and that he could get "[m]aybe 400-bucks" from a few friends. He provided no testimony about, nor did he offer any documentary evidence of, his assets and financial resources or those of his family. While he testified about a job that he had building boat docks "for about a year," he provided no testimony regarding his income or savings. Without more specific and detailed evidence related to appellant's finances and ability or inability to make bail, the trial court could have properly concluded that appellant's evidence regarding his financial circumstances was inadequate and that the bails set were reasonable. *See Coleman*, 2018 WL 1415520, at *2; *Ex parte Castellanos*, 420 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see, e.g.*, *Scott*, 122 S.W.3d at 870 (affirming trial court's refusal to lower bond, noting that evidence regarding

6

defendant's ability to make bond consisted of his testimony that he and his family lacked sufficient assets or financial resources to post bond but did not detail either his or his family's specific assets and financial resources, nor did appellant explain what efforts, if any, were made to furnish bond).

As far as ties to the community, appellant offered limited and vague testimony about his family and community ties, indicating that he "grew up in the area" and that he "would stay in the area" if placed on bond because "[he has] family here," "[his] father is here," "[his] son is here," and "[his] job is here." He did not explain what he meant by "the area"—for example, was he referring to the city, the county, or the state? He did not provide the names of or addresses for his family members or describe the nature of his relationship with them. Further, while appellant offered some evidence of his employment history, he offered no evidence of continuing work—that is, that his previous employment would be available to him should he bond out. He said that he would live with a friend in Marble Falls, who was "somebody that [he had] been with for a while now," but offered no details about the living arrangement, such as his friend's address, or about the nature of the relationship, such as how long they had been acquainted. Appellant offered nothing beyond general statements to show family or community ties that would limit the risk of flight or provide an incentive to remain in the jurisdiction.[2]

Furthermore, as noted above, there was evidence presented regarding appellant's prior criminal history, including a conviction for a violent crime, which subjected him to an enhanced punishment range for theses offenses. Appellant admitted that he had multiple prior

---

[2] The trial court could also have considered the fact that appellant is charged with an offense based on his flight from three police officers, which demonstrates that he could be a potential flight risk.

felony convictions, and the evidence showed that he went to prison on a twelve-year sentence for injury to a child. The record also reflects that appellant was released from his parole the month before he was arrested for the evading offense.

The primary purpose of requiring bail is to secure the presence of the accused at trial on the offenses charged. *Rodriguez*, 595 S.W.2d at 550. Thus, the amount of bail must be high enough to give reasonable assurance that the accused will appear for trial as required. *Charlesworth*, 600 S.W.2d at 317. However, while bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument of oppression. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). "This occurs when the trial court sets bail at an amount 'for the express purpose of forcing applicant to remain incarcerated.'" *Ex parte Temple*, 595 S.W.3d 825, 830 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (quoting *Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.)); *accord Brooks*, 376 S.W.3d at 226; *Ex parte Moore*, No. 03-12-00259-CR, 2012 WL 2078257, at *5 (Tex. App.—Austin June 8, 2012, no pet.) (mem. op., not designated for publication); *Richardson v. State*, 181 S.W.3d 756, 759 (Tex. App.—Waco 2005, no pet.).

Nothing in the record here indicates that the trial court refused to reduce the bail amounts "for the express purpose of forcing appellant to remain incarcerated" pending trial. The court made no statement indicating that it was refusing to reduce the bail amounts for the express purpose of keeping appellant incarcerated, and the record provides no basis for us to infer such motive.[3] *See Moore*, 2012 WL 2078257, at *6 (noting that "the district court made no statement suggesting that it was refusing to reduce the bond amount for the express purpose of keeping

---

[3] In fact, the trial court expressed its willingness to revisit the bail issue, stating that "if we get to a point where you've been in custody for a lengthy period of time and we still have not reached your case for trial, I'll obviously reconsider it."

[appellant] incarcerated"); *Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent [appellant] from posting bail."); *Ex parte Davis*, 147 S.W.3d 546, 549 (Tex. App.—Waco 2004, no pet.) ("The record contains nothing to indicate that the trial court rendered its decision on this basis [forcing appellant to remain incarcerated pending trial]."); *but see Harris*, 733 S.W.2d at 714 (finding abuse of discretion where trial judge stated, "I'd rather see him in jail than to see someone's life taken.").

The burden was on appellant to prove that bail was excessive, *see Rubac*, 611 S.W.2d at 849; *Charlesworth*, 600 S.W.2d at 317; *Beard*, 92 S.W.3d at 568, and the trial court would not have abused its discretion in finding that appellant failed to satisfy that burden here. The record supports implied findings by the trial court that appellant is facing a somewhat serious charge involving the use of a deadly weapon and risk to others, that appellant failed to provide specific and detailed information regarding his financial circumstances and ability to make bail, that he provided no detailed evidence showing significant ties to the community, and that he presents at least some risk to the community. On such a record, we cannot conclude that the trial court's decision to deny appellant's request for a bail reduction for these offenses was outside the zone of reasonable disagreement. Thus, we conclude that the trial court did not abuse its discretion in denying appellant's applications for writ of habeas corpus. We overrule appellant's sole point of error on appeal.

9

## CONCLUSION

Considering the record evidence in the light most favorable to the trial court's ruling, and measuring the court's ruling against the criteria informing the setting of pretrial bail, we conclude that the court did not abuse its discretion by denying appellant's applications for writ of habeas corpus seeking a reduction in bail. Accordingly, we affirm the trial court's orders denying habeas relief.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed: August 20, 2020

Do Not Publish